UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| REGIS PAILLARDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:09-cv-02312-HAB-DGB |
| | ) | |
| ADM LATIN AMERICA, INC., | ) | ORAL ARGUMENT REQUESTED |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM AND FOR IMPROPER VENUE**

In his Complaint, Plaintiff Regis Paillardon alleges that ADM Latin America, Inc. ("ADM Latin") has breached the Commission Agreement—a written agreement between ADM Latin and two Venezuelan citizens, Dr. Jorge Fernandez Merino and Elizabeth Zerpa de Fernandez (collectively "the Fernandez Parties")—by failing to pay him certain profits attributable to sales involving ADM de Venezuela.  While Paillardon is not a party to the Commission Agreement, he alleges he is entitled to certain payments set forth in the Commission Agreement because the Fernandez Parties transferred their shares in ADM de Venezuela to him and he was "correspondingly" assigned the Fernandez Parties' interests in the Commission Agreement.  To obtain such rights under the Commission Agreement, however, Paillardon, at a minimum, must plead and prove a written assignment or transfer of the Fernandez Parties' interests in Commission Agreement, executed and signed by the appropriate parties including Defendant ADM Latin.  Paillardon has failed to adequately plead that this writing exists or was ever executed.  Accordingly, the absence of this necessary allegation

demonstrates that the Complaint fails to state a claim for a breach of the Commission Agreement and should be dismissed.

Even if, however, this Court determines that Paillardon has adequately pled a claim for a breach of the Commission Agreement consistent with the pleading requirements of the Federal Rules of Civil Procedure, such a contractual claim, as conceded by Paillardon, is expressly subject to mandatory arbitration—in another judicial district, namely in Miami, Florida. In these circumstances, because this Court does not have jurisdiction to compel arbitration in Miami, the Complaint must be dismissed for improper venue under *Continental Casualty Co. v. American National Insurance Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

## FACTUAL BACKGROUND[1]

On or about March 1999, Archer-Daniels-Midland Company ("ADM") and the Fernandez Parties established a joint venture, ADM de Venezuela. Compl. ¶¶ 5, 6. To create this joint venture, ADM and the Fernandez Parties entered into several agreements, including the Commission Agreement and the Joint Venture Agreement ("JV Agreement"), both of which are referenced in and central to the allegations in the Complaint.[2] *Id.* ¶¶ 5–12, 14–15, 17–18.

---

[1] For the purpose of this motion, ADM Latin accepts as true, as it must, all well-pleaded allegations of the Complaint. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009).

[2] The Commission Agreement and the JV Agreement are attached for the Court's reference as Exhibits 1 and 2. *See* Ex. 3 (Affidavit of Jerrold H. Stocks authenticating Exhibits 1 and 2). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Cont'l Cas. Co.*, 417 F.3d at 731 n.2 (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also* Fed. R. Civ. P. 10(c)). Once the relevant agreements are attached, "[t]he court is not bound to accept the pleader's allegations as to the effect of [the written agreements] but can independently examine the document[s] and form its own conclusions as to the proper construction and meaning to be given [to] the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (quotations omitted). Because such documents are not "outside the pleadings" for the purpose of Federal Rule of Civil Procedure 12(d), the Court may properly refer to them on a motion to dismiss the complaint without

2

A.      **Relevant Provisions of the Commission Agreement**

The Commission Agreement describes how profits relating to ADM de Venezuela would be allocated. Ex. 1 (Commission Agreement) at second unnumbered page. First, it states that ADM's interest in ADM de Venezuela was transferred to ADM's wholly owned subsidiary, ADM Latin. *Id.* at first unnumbered page; Compl. ¶ 6. Second, it specifies that "during the term of this Agreement and so long as the Fernandez Parties remain shareholders of ADM Venezuela, ADM Latin will pay the Fernandez Parties a commission equal to, in the aggregate, fifty percent (50%) of the Profits arising from the conduct of the Business." Ex. 1 (Commission Agreement) at second unnumbered page; Compl. ¶ 8. By its terms, the Commission Agreement was to "remain in effect for so long as the JV Agreement shall remain in effect." Ex. 1 (Commission Agreement) at third unnumbered page.

Notably, the Commission Agreement places specific restrictions on the transfer or assignment of interests and modification of the Agreement. Section G provides:

> *Neither party may assign or transfer (by operation of law or otherwise) this Agreement or any interest herein without the express written consent of the other party, which consent a party may withhold in its sole discretion, and any attempted assignment without such consent shall be void*. This Agreement shall be binding upon and inure to the benefit of the parties and their respective *permitted* successors and assigns.

*Id.* at fourth unnumbered page (emphases added). Section E provides: "This Agreement may be modified, changed or amended only by a writing signed on behalf of both parties." *Id.*

---

conversion to a motion for summary judgment. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

3

**B.     Relevant Provisions of the JV Agreement**

The JV Agreement includes a number of provisions relating to the operation and management of ADM de Venezuela. It contains a mandatory arbitration provision requiring that "[a]ny dispute arising out of this Agreement be settled by binding arbitration." Ex. 2 (JV Agreement) at 9.

> 9.1    Any dispute arising out of this Agreement shall be settled by binding arbitration conducted by a single arbitrator in accordance with the Commercial Rules of the American Arbitration Association. Judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. The place of the arbitration shall be Miami, Florida. The language in which the arbitration shall be conducted is English.
>
> 9.2    The arbitrator may not award monetary damages in excess of compensatory damages, and each party hereby irrevocably waives any right to recover all other types of damages with respect to any dispute resolved by arbitration. The arbitrator shall apply to this Agreement the law that a Venezuelan court would apply in the event of litigation regarding the issue in question. Nothing in this Section 9 prevents a party from seeking injunctive or other equitable relief from any court of competent jurisdiction if, in the party's sole judgment, such an action is necessary to avoid irreparable damage or to preserve the status quo until such time as the arbitration award is rendered or the controversy is otherwise resolved.

*Id.*

**C.     Paillardon's Allegations**

While Paillardon is not a party to the Commission Agreement, he claims he is entitled to a payment under the terms of the Commission Agreement as an assignee by virtue of his purchase of the Fernandez Parties' shares in ADM de Venezuela.[3] Compl. ¶ 9. He specifically alleges that:

---

[3] Paillardon's allegations are internally inconsistent on this point. He initially alleges that he succeeded by assignment to the Commission Agreement, *see* Compl. ¶ 9, but later alleges that he was a party to the Commission Agreement, *see id.* ¶ 17. The attached Commission Agreement, Ex. 1, makes clear that Paillardon is not a party to the Commission Agreement.

4

> On or before May 2005, Paillardon purchased the interests held in ADM Venezuela by the Fernandez Parties, and became a shareholder of ADM Venezuela (which he has remained at all times relevant hereto). On or before May 2005, Paillardon correspondingly succeeded, by way of assignment, to the Fernandez Parties' interests in the Commission Agreement.

*Id*.

Paillardon further alleges that "[i]n or about November 2007, Paillardon sold twenty percent of his equity interest in ADM Venezuela to a third party, and likewise transferred to the same third party the right to receive an aggregate of ten percent (i.e., twenty percent of Paillardon's fifty percent) of the yearly total Profits of ADM Latin arising from the conduct of the Business." *Id.* ¶ 10. The Complaint further alleges that "[f]ollowing this transaction, Paillardon was, under the Commission Agreement, entitled to receive an aggregate of forty percent of the yearly total Profits of ADM Latin arising from the conduct of the Business." *Id.*

Lastly, Paillardon concedes that the mandatory arbitration provision in the JV Agreement applies to his breach of contract claim. *Id.* ¶ 15 ("Paillardon acknowledges that the instant dispute is subject to the arbitration agreement contained in the [JV Agreement], but believes this dispute is most efficiently resolved in this Court.").

### I. THE COMPLAINT FAILS TO STATE A CLAIM FOR A BREACH OF THE COMMISSION AGREEMENT

Paillardon's sole claim in his Complaint is that ADM Latin breached the Commission Agreement by failing to make certain payments allegedly required by the Commission Agreement. *See* Compl. ¶¶ 17–19. Because Paillardon fails to allege a critical fact necessary to state a breach of contract claim—the existence of a written assignment—his Complaint must be dismissed.

The Commission Agreement expressly requires that any attempted assignment or transfer, "by operation of law or otherwise," of any interest under the Agreement, including the

5

right to commission payments, is null and void without the express written consent of each other party to the Agreement. Ex. 1 (Commission Agreement) at fourth unnumbered page. Paillardon does not allege a consent occurred, in writing or otherwise, or that any writing was executed in connection with the purported assignment. To the contrary, the Complaint as currently pled states that Paillardon does not rely on a writing evidencing the alleged assignment, but rather that when Paillardon allegedly "purchased" the Fernandez Parties' shares under the JV Agreement, he "*correspondingly* succeeded, by way of assignment," to the Commission Agreement. Compl. ¶ 9 (emphasis added). This allegation is plainly insufficient to ground any entitlement to relief under the Commission Agreement because that Agreement imposes a specific procedure for assignments and for any modifications or changes to the Agreement—they must be in writing. *See* Ex. 1 (Commission Agreement) at fourth unnumbered page. Because Paillardon has not pled that his purported assignment to the Commission Agreement occurred in the manner authorized by the Commission Agreement, the Complaint fails to state a claim for a breach of the Commission Agreement. Without pleading the existence of a valid written assignment, Paillardon, who is not a party to the Commission Agreement, cannot seek payment under its terms. Accordingly, the Complaint must be dismissed.[4]

As currently pled, the Complaint contains only the vague and conclusory allegation that on or before May 2005, "Paillardon purchased the interests" held by the Fernandez Parties, "became a shareholder of ADM Venezuela," and "correspondingly succeeded, by way of assignment, to the Fernandez Parties' interests in the Commission Agreement." Compl. ¶ 9.

---

[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

6

Such vague allegations are insufficient to allow Paillardon's contractual claim to proceed. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

Paillardon fails to supply a single well-pleaded factual allegation with respect to the purported assignment of the Commission Agreement. Without a valid written assignment or transfer, including the express written consent of the appropriate parties including ADM Latin, Paillardon has no contractual right to payment under the Commission Agreement. Rather than allege such facts, however, the Complaint rests on precisely the "[t]hreadbare" legal conclusions which the Supreme Court denounced as unworthy of the presumption of truth, *id.* at 1949. At best, Plaintiff has pled allegations merely consistent with a prospect of recovery; at worst, Plaintiff has pled the existence of a contract that, by its literal terms, imposed specific requirements that were not satisfied. In either event, the claim does not meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and *Iqbal*. Accordingly, the Complaint should be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

## II.     THE COMPLAINT SHOULD BE DISMISSED FOR IMPROPER VENUE

Even if this Court determines that Paillardon has adequately pled a claim for a breach of the Commission Agreement consistent with the pleading requirements of the Federal Rules of Civil Procedure, the Complaint must still be dismissed for improper venue because the action is subject to mandatory arbitration in another judicial district.  Paillardon's claim is premised on two written agreements to which Paillardon claims to have succeeded as an assignee or transferee—the Commission Agreement and the JV Agreement.  While ADM Latin disputes that Paillardon has properly pled a breach of the Commission Agreement, it is undisputed that the arbitration provision in the JV Agreement would apply to the sole claim in this lawsuit if the litigation were allowed to proceed.[5]  Compl. ¶ 15.  That provision broadly subjects to mandatory arbitration "[a]ny dispute" arising out of the JV Agreement.  Ex. 2 (JV Agreement) at 9.  Not surprisingly, Plaintiff not only concedes, but affirmatively pleads, "that the instant dispute is subject to the arbitration agreement contained in the [JV Agreement]."[6]  Compl. ¶ 15.

Because the arbitration provision specifies a forum outside of this judicial district, the proper remedy for this Court is to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(3) rather than stay the litigation while any arbitration proceeds.  The arbitration provision

---

[5] If Paillardon were able to plead or ultimately demonstrate the existence of a written assignment under the Commission Agreement, dismissal under Rule 12(b)(3) would still be required.

[6] This admission distinguishes this case from others in which the party who opposed arbitration claimed not to have consented to the arbitration clause because, for example, that party did not sign the contract containing the arbitration agreement.  Some disputes over the existence of an arbitration agreement have been held to be for the court to resolve, rather than the arbitrator—the court determines whether the party who opposes arbitration assented to it.  *See Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 590–91 (7th Cir. 2001).  Here, by contrast, not only does Plaintiff fail to deny that he is bound by the arbitration agreement; he has affirmatively pled that he is so bound, *see* Compl. ¶ 15, and is thus estopped from denying that the contract, if validly assigned to him as he contends, subjects this dispute to arbitration as set forth in the JV Agreement.

8

specifies that the place of the arbitration is Miami, Florida. Ex. 2 (JV Agreement) at 9. Because the arbitration agreement selects a forum outside the Central District of Illinois, the Complaint must be dismissed for improper venue under Federal Rule of Civil Procedure 12(b)(3). *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (holding that where valid and applicable arbitration provisions "required arbitration in other districts," the complaint was correctly dismissed for improper venue under Rule 12(b)(3)). Outright dismissal, rather than stay, is the proper remedy here because the arbitration clause selects a forum in which this Court cannot compel proceedings. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) ("[W]here the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order [under the Federal Arbitration Act] compelling arbitration."). As such, if the Court does not dismiss the Complaint under Rule 12(b)(6), dismissal is nonetheless required under Rule 12(b)(3) for improper venue.

## CONCLUSION

WHEREFORE, the Defendant, ADM Latin America, Inc., respectfully requests that the Court dismiss the Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, to the extent the Court determines that the Complaint adequately sets forth a claim for breach of the Commission Agreement to satisfy the pleading requirements of the Federal Rules of Civil Procedure, then the Complaint must be dismissed for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). ADM Latin America, Inc. respectfully requests oral argument on this motion pursuant to CDIL-LR 7.1(A)(2) for the reason that ADM Latin seeks alternative relief as to which the opportunity for hearing would enable discussion of potential ruling on the antecedent grounds

that could impact the alternative relief sought, and the opportunity for hearing would promote the advancement of the litigation toward resolution.

Dated: February 16, 2010

        ADM LATIN AMERICA, INC., Defendant,

BY:   WINTERS, FEATHERSTUN, GAUMER, POSTLEWAIT, STOCKS & FLYNN,

BY:   /s/ Jerrold H. Stocks
        Jerrold H. Stocks
        ARDC No.: 06201986
        WINTERS, FEATHERSTUN, GAUMER, POSTLEWAIT, STOCKS & FLYNN
        225 N. Water St., Suite 200
        P. O. Box 1760
        Decatur, Illinois 62525
        Telephone: (217) 429-4453
        Fax: (217) 425-8892
        E-Mail: jstocks@family-net.net
               jstocks@centralillaw.com

CERTIFICATE OF SERVICE

    I certify that on February 16, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM-ECF System which will send notification of such filing to the following:

Anthony B. Ullman
Salans, LLP
Rockefeller Center
620 Fifth Avenue
New York, NY  10020
VIA E-MAIL:  aullman@salans.com

    /s/ Jerrold H. Stocks
Jerrold H. Stocks
ARDC No.:  06201986
WINTERS, FEATHERSTUN, GAUMER,
POSTLEWAIT, STOCKS & FLYNN
225 N. Water St., Suite 200
P. O. Box 1760
Decatur, Illinois  62525
Telephone:  (217) 429-4453
Fax:  (217) 425-8892
E-Mail:  jstocks@family-net.net
       jstocks@centralillaw.com